513-07/MEU/LJK
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
BHATIA SHIPPING AND AGENCIES PVT. LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BHATIA SHIPPING AND AGENCIES PVT. LTD.,

                        Plaintiff,

- against --

ALCOBEX METALS LTD.,

                        Defendant.
-----------------------------------------------------------------x

07-Civ-

VERIFIED COMPLAINT

Plaintiff BHATIA SHIPPING AND AGENCIES PVT. LTD. (hereinafter "BHATIA"), by its attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant ALCOBEX METALS LTD. (hereinafter, "ALCOBEX") alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the recognition and enforcement of a foreign maritime judgment. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

2. At all times relevant hereto, BHATIA was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Shipping House, 24/26 Kumtha Street, Ballard Estate, Mumbai 400038, India.

3. At all times relevant hereto, Defendant ALCOBEX was and still is a foreign business entity existing under the laws of a foreign country with an office and place of business at 4223/1 Ansari Road, Darya Ganj, New Delhi 110-002, India.

4. BHATIA contracted with ALCOBEX to carry eight boxes of bronze tubes from Mumbai, India to Stafford, England via Avonmouth for delivery to (or to the order of) non-party Salem Tube International Ltd.

5. The contract of carriage was contained in two multimodal transport documents dated February 2, 2002, issued by ALCOBEX pursuant to the Indian Multimodal Transportation of Goods Act 1993.

6. Under the contract, BHATIA was obliged to deliver the goods.

7. BHATIA took charge of the cargo and shipped it from Mumbai on the M/V PERSEY for carriage to England. BHATIA was not the owner of the vessel but instead had retained Sai Shipping, as owner of the M/V PERSEY, to carry out the transport.

8. The vessel arrived at Avonmouth and the goods were discharged from the vessel. The ship's agents, Cory Brothers Shipping Ltd., at the request of Salem Tube International Ltd., authorized the release of the cargo without presentation of the original documents (which act as a receipt for the goods).

9. Salem Tube paid the port and handling charges for the cargo and collected it themselves from Avonmouth on or before May 17, 2002, foregoing the road carriage portion of the transportation contract that would have delivered the cargo to Salem Tube at Stafford.

10. According to ALCOBEX, Salem Tube never paid for the goods themselves, which had been sold on cash against documents terms, and ALCOBEX alleged that the goods were misdelivered and converted.

11. Indian lawyers for ALCOBEX sent BHATIA a letter before action on September 21, 2002 alleging misdelivery and conversion, alleging also collusion between the shipping company and Salem Tube. A chasing letter was sent on October 29, 2002, which was then followed by a further letter before action from new lawyers acting for ALCOBEX on January 6, 2003 which again advanced a claim in conversion. A third firm of lawyers acting for ALCOBEX sent a further letter before action on June 20, 2003 to BHATIA.

12. The contract of carriage between BHATIA and ALCOBEX provided, at Clause 23, that in the event of a dispute between the parties, resolution was to be decided by court action in a court of competent jurisdiction in one of several places. One of the places permitted under Clause 23 was the place of the delivery of the goods.

13. On April 4, 2003, BHATIA initiated proceedings in the High Court of Justice, Queens Bench Division Commercial Court in London, England, which was a court of competent jurisdiction in the place of the delivery of the goods. Among other forms of relief, BHATIA sought a declaratory judgment that it was not liable to ALCOBEX for any damages suffered as a result of the alleged misdelivery or conversion of the subject cargo on the basis that any such claim was untimely pursuant to the "Limitation of Action" clause (Clause 22) of the contract between BHATIA and ALCOBEX.

14. Clause 22 provided in pertinent part as follows:

> Any action relating to multimodal transport under the condition [sic] shall be time barred if judicial proceedings have not been instituted within a period of nine months after:
> (1) the date of delivery of the goods, or

    (2) the date when the goods should have been delivered, or

    (3) the date on and from which the party entitled to receive has the right to treat the goods as lost.

15. More than the required minimum time had passed and ALCOBEX's claim, if any, was already time-barred when BHATIA filed its action on April 4, 2003 in the English High Court.

16. The English High Court, after finding that it had jurisdiction over the dispute and the parties, held that any claim by ALCOBEX against BHATIA was time-barred and issued a declaratory judgment so stating. A notarized copy of the judgment is annexed hereto as Ex. 1.

17. Under English law, the prevailing party is entitled to recover its costs (including certain allowable attorneys fees) and the English High Court accordingly awarded BHATIA costs in the amount of £68,000 (the equivalent of US$138,244.79, using a conversion rate of £1 = $2.033301).

18. Although duly demanded, ALCOBEX has refused or otherwise failed to pay the judgment of £68,000.

19. There is no legitimate basis at all for ALCOBEX to refuse to pay the judgment. ALCOBEX's refusal or other failure to pay the judgment, which was made pursuant to a clear law and jurisdiction clause in a contract ALCOBEX executed is willful and in bad faith.

20. The judgment should be recognized and enforced as a judgment of this Court under principles of comity and in conformity with Article 53 of the New York CPLR. This Court should also award BHATIA its costs and attorneys fees incurred here in attempting to collect on the judgment by reason of ALCOBEX's bad faith refusal to pay.

21. In all, the claim for which BHATIA sues in this action, as near as presently may be estimated, totals **$138,244.79**, exclusive of attorneys fees and costs incurred in New York, no

part of which has been paid by ALCOBEX, though duly demanded. BHATIA specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum be insufficient to fully secure BHATIA.

22. Upon information and belief, and after investigation, Defendant ALCOBEX cannot be "found" within this district for the purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to, from, or for the benefit of Defendant ALCOBEX (hereinafter, "ASSETS"), including but not limited to ASSETS at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

**WHEREFORE**, Plaintiff BHATIA prays:

a. That process in due form of law according to the practice of this Court issue against Defendant ALCOBEX, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of $138,244.79 plus interest, costs and attorneys fees;

b. That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the sum of **$138,244.79** be restrained and attached, including but not limited to any cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or any other property of, belonging to, due to, from, or for the benefit of

Defendants (collectively "ASSETS"), including but not limited to such ASSETS as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.  That this Court recognize and enforce the English High Court Judgment in favor of BHATIA and against ALCOBEX and also retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and

d.  For such other, further and different relief as this Court may deem just and proper in the premises, including but not limited to an award of attorneys fees incurred in this action as a result of the bad faith refusal or failure to pay on the English High Court Judgment rendered against ALCOBEX.

Dated: New York, New York
October 18, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
BHATIA SHIPPING AND AGENCIES PTE. LTD.

By: _____
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

## **ATTORNEY VERIFICATION**

State of New York    )
                     ) ss.:
County of New York   )

      MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

      1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

      3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
18th day of October, 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08