**JAMES A. SAVILLE, JR.**
**KIPP C. LELAND**
**HILL RIVKINS & HAYDEN LLP**
Attorneys for Defendant
Alcobex Metals Ltd.

45 Broadway - Suite 1500
New York, New York 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
  :
BHATIA SHIPPING AND AGENCIES PVT. LTD.   :
  :   Docket No.: 1:07-cv-9346(BSJ)
           Plaintiff,   :
  :
     -against-   :   **AFFIRMATION OF**
  :   **G.C. KANUNGA**
ALCOBEX METALS LTD.,   :
  :
           Defendant.   :
  :
-----------------------------------X

I, G.C. Kanunga, hereby affirm under the penalty of perjury as follows:

1. I am the Managing Director of Alcobex Metals Ltd. ("Alcobex") and I make this affirmation in support of Alcobex's motion to vacate the Process of Maritime Attachment and Garnishment obtained by Bhatia Shipping and Agencies Pvt. Ltd. ("Bhatia"). I make this affirmation based upon my personal knowledge and the documents maintained by Alcobex in the regular course of its business.

2. Alcobex is an Indian company duly registered under the Indian Companies Act of 1956 and has its principal place of business Jodhpor, India. Alcobex is in the business of *inter alia* manufacturing and exporting non-ferrous metals, rods, pipes, tubing, zinc, ingots etc.

3. In April 2001, Salem Tube International Ltd. ("Salem"), a UK company, placed an order with Alcobex for 950 18mm tubes at a price of £88.00 per tube. The terms of payment were 100% cash against documents ("CAD"). Salem placed a further order for 155 25.4mm aluminum bronze tubes at a price of £84.00 per tube. Again, the terms were 100% CAD and the terms of delivery were "CIF UK Port." Under CAD terms, in the normal course, Salem would be required to tender the full invoice price to Alcobex's bank (or its correspondent) in order to obtain the original bills of lading. Only with the original bills of lading could Salem take delivery of the cargo. True and accurate copies of Salem purchase orders are attached hereto as Exhibit 1.

4. Alcobex manufactured the tubes for Salem and invoiced Salem for the full "CIF Felixstowe" price of £96,620.00. Felixstowe, in the United Kingdom, was the port selected by Salem to take delivery of the tubes. A true and accurate copy of Alcobex's invoice No. AML/Exp/2001-2002/154 dated January 19, 2002 is attached hereto as Exhibit 2.

5. The tubes were packed into eight crates for shipment. To ship the tubes to Felixstowe, Alcobex retained defendant Bhatia Shipping & Agencies Pvt. Ltd. ("Bhatia"), an Indian freight forwarder/carrier based in Mumbai, India. Bhatia issued Multimodal Transport Documents ("MTD") BOM/WMD/047 and BOM/WMD/048 to Alcobex for the shipment of eight crates of tubes from Mumbai to West Midlands and Stafford via Avonmouth. Both MTDs indicated that "One of the MTD(s) must be surrendered, duly endorsed, in exchange for the goods." True and accurate copies of MTD BOM/WMD/047 and BOM/WMD/048 are attached hereto as Exhibit 3.

6. In turn, Bhatia retained Sai Shipping Co. Pvt. Ltd., who issued a liner bill of lading dated February 21, 2002 for the shipment of the eight crates aboard the M/V PERSEY. A true and accurate copy of the foregoing bill of lading is attached hereto as Exhibit 4.

7. The shipment of tubes arrived at Felixstowe in good order and condition. Prior to the arrival of the shipment, Alcobex had presented the original MTDs, invoices and other commercial documents to its bank, who routed the documents to Salem's bank, National Westminster Bank, in the United Kingdom. Although the cargo arrived in February 2002, payment was not forthcoming for some time. Alcobex inquired as to the status of the shipment and in May 2002 learned that the tubes had been delivered to Salem even though Salem had not obtained the original bills of lading.

8. Consistent with its obligations under the MTDs, Bhatia and/or its agents should not have released the cargo without presentation of the original bills of lading. Alcobex never authorized Bhatia or its agents to release the cargo without presentation of the original bills of lading. To date, Salem has not paid for the shipment of tubes.

9. Alcobex claimed against Bhatia in India and demanded immediate payment. Alcobex was advised by Mohan Bhatiya, Chairman of Bhatia, that as the claim amount was so large, it could not be paid at once and that Bhatia would file a claim with its underwriters. Alcobex was assured that its claim would be paid and Bhatia acknowledged that it was liable for Alcobex's loss. Alcobex formally filed a claim with Bhatia on December 14, 2002. Bhatia apparently filed the claim with its underwriters and exchanged numerous pieces of correspondence with Mankad

& Associates Insurance Services Pvt. Ltd. ("Mankad"). Bhatia provided copies of this correspondence to Alcobex.

10. In its correspondence to Mankad, Bhatia noted that "It is high time that this claim should now be settled honourably on warfooting in all fairness" and "It is a prima-facie case where a consignment has been conclusively delivered without presentation of original Bill of Lading. This is a case of mis-delivery." In its January 7, 2003, letter to Mankad, Bhatia stated ". . . please advise us what reply is to be sent [to Alcobex] as we find no legal defense in the instant case where . . . misdelivery has been admitted more than once in correspondence exchanged with the shipper [Alcobex]." Bhatia's assurances to Alcobex that the claim would be settled continued into 2003. True and accurate copies of the December 18, 2002, December 31, 2002, January 7, 2003 and January 28, 2003 letters from Bhatia to Mankad are attached hereto as Exhibit 5.

11. As no payment by Bhatia had been made, Alcobex, through counsel, sent a final demand letter was sent on June 20, 2003. A true and accurate copy of the June 20, 2003 letter is attached hereto as Exhibit 6.

12. Despite Bhatia's repeated assurances in India that the claim would be resolved, on or about April 3, 2003, Bhatia filed suit against Alcobex and other parties in the transportation chain in the High Court of Justice, Queen's Bench Division, Commercial Court seeking a declaration, *inter alia*, that Alcobex's claims against Bhatia were time barred under the terms and conditions of the MTD. In August 2003, Alcobex was served with a claim form in connection

with the English proceeding commenced by Bhatia. About the same time Alcobex commenced criminal proceedings for criminal breach of trust against Bhatia under Indian law. This matter is still pending and awaiting final judgment.

12. I returned the Acknowledgement of Service received in August 2003 to the English Court noting that Alcobex intended to challenge the jurisdiction of the Court. A true and accurate copy of my September 10, 2003 letter is attached hereto as Exhibit 7.

13. On September 17, 2003, the Clerk of the Admiralty and Commercial Registry advised me that the Acknowledgement of Service was defective as it did not list an address within the (English) jurisdiction at which Alcobex could be served. A true and accurate copy of the September 17, 2003, letter form the Clerk is attached hereto as Exhibit 8.

14. Alcobex does not carry insurance for this type of claim and therefore would have been required to pay the fees of English counsel itself. The costs of retaining defending Bhatia's action in England would have posed a significant financial burden. Aside from retaining English solicitors, Alcobex would have been required to bear the expense of producing witnesses, who are key employees to Alcobex's Indian operation, in the United Kingdom as well. This financial burden was compounded by the fact that Salem failed to pay Alcobex for the shipment of tubes. Further, litigation in England would have taken away from my responsibilities as Managing Director of Alcobex. In short, England was an extremely inconvenient and distant forum for Alcobex to participate in litigation and Alcobex did not have the financial capacity to fund litigation in England.

15. On October 7, 2003, Mr. Gupta of Alcobex filed an application with the High Court of Justice seeking to stay the proceedings, setting aside service, or, alternatively, granting additional time to serve further evidence in support of the application. Although Alcobex contacted the Clerk of the Admiralty and Commercial Registry, the Clerk never scheduled Alcobex's application for a hearing. A true and accurate copy of the Application is attached hereto as Exhibit 9.

16. On January 30, 2004, Alcobex commenced a recovery proceeding against Bhatia and Salem before the Bombay High Court. On or about October 1, 2004, Bhatia filed an answer to Alcobex's complaint in the Bombay High Court. Aside from denying liability, Bhatia asserted that the action should be stayed pending the outcome of the October 11, 2004, hearing on the basis that the English proceeding was filed prior to the action in the Bombay High Court.

17. On June 25, 2004, the English Court set the matter for trial on October 11, 2004. Alcobex received notice of the October hearing from Bhatia's English solicitors. Alcobex was still in no position to fund litigation in England.

18. On October 20, 2004, the English High Court issued a Judgment and Order (the "UK Judgment") finding that it had personal jurisdiction over Alcobex, that Alcobex's claim was time barred and awarding £68,000 in costs to Bhatia.

19. In May 2004, Bhatia filed a summary suit against Alcobex for outstanding freight charges in the Bombay High Court. In June 2007, the Court rejected Bhatia's application for a summary disposition and granted Alcobex leave to defend the claim. A true and accurate copy of the Order from the High Court of Judicature at Bombay is attached hereto as Exhibit 10.

I hereby affirm under the penalty of perjury of the United States of America that the foregoing statements and true and accurate. Executed on January 4, 2008.

_____
G.C. Kanunga