**JAMES A. SAVILLE, JR.**
**KIPP C. LELAND**
**HILL RIVKINS & HAYDEN LLP**
Attorneys for Defendant
Alcobex Metals Ltd.

45 Broadway – Suite 1500
New York, New York  10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                             :

BHATIA SHIPPING AND AGENCIES PVT. LTD.  :
                                             :     Docket No.: 1:07-cv-9346(BSJ)
                        Plaintiff,     :

                  -against-           :

ALCOBEX METALS LTD.,               :

                    Defendant.    :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO VACATE

Defendant Alcobex Metals Ltd. ("Alcobex") respectfully submits this memorandum of

law in support of its motion to vacate the Process of Maritime Attachment and Garnishment

obtained by plaintiff Bhatia Shipping and Agencies Pvt. Ltd. ("Bhatia") pursuant to Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure ("Rule B"). As set forth herein, considerable legal and equitable grounds exist for this

Court to exercise its discretion in favor of vacatur.

## FACTS

Alcobex is an Indian company duly registered under the Indian Companies Act of 1956 and has its principal place of business Jodhpor, India. Alcobex is in the business of *inter alia* manufacturing and exporting non-ferrous metals, rods, pipes, tubing, zinc, ingots etc. *See* Affirmation of G.C. Kanunga dated January 4, 2008, at ¶2 (hereinafter "Kanunga Aff.").[1]

In April 2001, Salem Tube International Ltd. ("Salem") placed an order with Alcobex for 950 18mm tubes at a price of £88.00 per tube. The terms of payment were 100% cash against documents ("CAD"). Kanunga Aff. ¶3, Exh. 1. Salem placed a further order for 155 25.4mm aluminum bronze tubes at a price of £84.00 per tube. *Id.* Again, the terms were 100% CAD and the terms of delivery were "CIF UK Port." *Id.* Under CAD terms, in the normal course, Salem would be required to tender the full invoice price to Alcobex's bank (or its correspondent) in order to obtain the original bills of lading. Only with the original bills of lading could Salem take delivery of the cargo. *Id.*

Alcobex manufactured the tubes for Salem and invoiced Salem for the full "CIF Felixstowe" price of £96,620.00. Kanunga Aff. ¶4, Exh. 2. Felixstowe, in the United Kingdom, was the port selected by Salem to take delivery of the tubes. *Id.*

The tubes were packed into eight crates for shipment. To ship the tubes to Felixstowe, Alcobex retained defendant Bhatia Shipping & Agencies Pvt. Ltd. ("Bhatia"), an Indian freight forwarder/carrier based in Mumbai, India. Kanunga Aff. ¶9. Bhatia issued Multimodal

---

[1] A copy of the Kanunga Affirmation is attached as Exhibit A to the Affirmation of James A. Saville, Jr., dated January 4, 2008.

Transport Documents ("MTD") BOM/WMD/047 and BOM/WMD/048 to Alcobex for the shipment of eight crates of tubes from Mumbai to West Midlands and Stafford via Avonmouth. *Id.*, Exh. 3. Both MTDs indicated that "One of the MTD(s) must be surrendered, duly endorsed, in exchange for the goods." To transport the crates from Mumbai to Avonmouth, Bhatia retained Sai Shipping Co. Pvt. Ltd., who issued a liner bill of lading dated February 21, 2002, for the shipment of the eight crates aboard the M/V PERSEY. Kanunga Aff. ¶6, Exh. 4.

The shipment of tubes arrived at Felixstowe in good order and condition. Prior to the arrival of the shipment, Alcobex had presented the original MTDs, invoices and other commercial documents to its bank, who routed the documents to Salem's bank, National Westminster Bank, in the United Kingdom. Kanunga Aff. ¶7    Although the cargo arrived in February 2002, payment was not forthcoming for some time. Accordingly, Alcobex inquired as to the status of the shipment and in May 2002 learned that the tubes had been delivered to Salem even though Salem had not obtained the original bills of lading. *Id.*

Consistent with its obligations under the MTDs, Bhatia and/or its agents should not have released the cargo without presentation of the original bills of lading. Furthermore, Alcobex never authorized Bhatia or its agents to release the cargo without presentation of the original bills of lading. Kanunga Aff. ¶8. To date, Salem has not paid for the shipment of tubes.

Shortly thereafter, Alcobex claimed against Bhatia in India and demanded immediate payment of the value of the tubes. Kanunga Aff. ¶9. Alcobex was advised by Mohan Bhatiya, Chairman of Bhatia, that as the claim amount was so large, it could not be paid at once and that

Bhatia would file a claim with its underwriters. *Id.* Alcobex was assured that its claim would be paid and Bhatia acknowledged that it was liable for Alcobex's loss. Alcobex formally filed a claim with Bhatia on December 14, 2002. Bhatia apparently filed the claim with its underwriters and exchanged numerous pieces of correspondence with Mankad & Associates Insurance Services Pvt. Ltd. ("Mankad"). Bhatia provided copies of this correspondence to Alcobex. *Id.*

Recognizing the validity of Alcobex's claim, Bhatia advised its underwriters, in no uncertain terms, to pay the claim. For example, in its correspondence to Mankad, Bhatia noted that "It is high time that this claim should now be settled honourably on warfooting in all fairness" and "It is a prima-facie case where a consignment has been conclusively delivered without presentation of original Bill of Lading. This is a case of mis-delivery." In its January 7, 2003, letter to Mankad, Bhatia stated ". . . please advise us what reply is to be sent [to Alcobex] as we find no legal defense in the instant case where . . . misdelivery has been admitted more than once in correspondence exchanged with the shipper [Alcobex]." Kanunga Aff. ¶10, Exh. 5. Bhatia's assurances to Alcobex that the claim would be settled continued into 2003 and still no payment was made. Accordingly, Alcobex, through counsel, sent a final demand letter was sent on June 20, 2003. Kanunga Aff. ¶11, Exh. 6.

Despite Bhatia's repeated assurances in India that the claim would be resolved, unbeknownst to Alcobex, on or about April 3, 2003, Bhatia ran to England and filed suit against Alcobex and other parties in the transportation chain in the High Court of Justice, Queen's Bench Division, Commercial Court seeking a declaration, *inter alia*, that Alcobex's claims against Bhatia were time barred under the terms and conditions of the MTD. Kanunga Aff. ¶12.

4

Eventually, in August 2003, Alcobex was served with a claim form in connection with the English proceeding commenced by Bhatia. About the same time Alcobex commenced criminal proceedings for criminal breach of trust against Bhatia under Indian law. That matter is still pending and awaiting final judgment. *Id.*

Mr. Kanunga, the Managing Director of Alcobex, returned the Acknowledgement of Service received in August 2003 to the English Court specifically noting that Alcobex intended to challenge the jurisdiction of the Court. Kanunga Af. ¶12, Exh. 7. On September 17, 2003, the Clerk of the Admiralty and Commercial Registry advised Alcobex that the Acknowledgement of Service was defective as it did not list an address within the (English) jurisdiction at which Alcobex could be served. *Id.*, Exh. 8. The Clerk, however, did confirm that the Acknowledgement of Service would nevertheless be accepted until such time an application was made to strike it out. *Id.* Alcobex was not insured for the legal costs and expenses associated with defending the English proceeding brought by Bhatia and, therefore, would have been required to pay the fees of English solicitors itself. Kanunga Aff. ¶14. However, the costs of retaining English solicitors and defending Bhatia's action in England would have posed a significant financial burden. Kanunga Aff. ¶14.

Consequently, on October 7, 2003, Mr. Gupta of Alcobex filed an application with the High Court of Justice seeking to stay the proceedings, setting aside service, or, alternatively, granting additional time to serve further evidence in support of the application. *Id.,* ¶15, Ex. 9 Although Alcobex contacted the Clerk of the Admiralty and Commercial Registry, the Clerk never scheduled Alcobex's application for a hearing. *Id.,*

On January 30, 2004, Alcobex commenced a recovery proceeding against Bhatia and Salem before the Bombay High Court. On or about October 1, 2004, Bhatia filed an answer to Alcobex's complaint in the Bombay High Court. Aside from denying liability, Bhatia asserted that the action should be stayed pending the outcome of the October 11, 2004, hearing on the basis that the English proceeding was filed prior to the action in the Bombay High Court. The Indian action is still pending.

On June 25, 2004, the English Court set the matter for trial on October 11, 2004. Alcobex received notice of the October hearing from Bhatia's English solicitors but still was in no position to fund litigation in England. *Id.* at ¶17. Thereafter, without Alcobex's participation and despite the pending Indian action, the English Court considered Bhatia's claim and on October 20, 2004, the English High Court issued a Judgment and Order (the "UK Judgment") finding that it had personal jurisdiction over Alcobex, finding that Alcobex's claim was time barred and awarding £68,000 in costs to Bhatia. *Id.* at ¶18. Bhatia has now filed suit in the United States District Court for the Southern District of New York and obtained an Order of Maritime Attachment against Alcobex in the amount of USD$138,244.79.

## ARGUMENT

### EQUITY DEMANDS THAT BHATIA'S ATTACHMENT MUST BE VACATED

In order to sustain a maritime attachment, it is well established that the plaintiff bears the burden of demonstrating that: (1) it has a valid maritime claim; (2) the defendant cannot be found within the district; (3) the defendant's property can be found in the district; and (4) there is no

maritime or statutory bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2d Cir. 2006).

It is equally well settled that a court may vacate an attachment on the following discretionary grounds: (1) the defendant is present in a convenient adjacent jurisdiction; (2) the defendant is present in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for a judgment. *Aqua Stoli,* 460 F.3d at 439. Furthermore, the district court has the inherent authority to vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff. *Chiquita Int'l Ltd. v. M/V Bosse,* 2007 WL 2979632 (S.D.N.Y. 2007); *Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal,* 411 F.Supp.2d 386, 391 (S.D.N.Y. 2006); *see also Greenwich Marine, Inc. v. S.S. Alexandria,* 339 F.2d 901, 905 ("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge.").

In the first instance, the English Judgment upon which Bhatia bases its attachment is simply a common law money judgment and cannot be considered a maritime claim. Therefore, in the absence of a maritime claim, Bhatia's attachment cannot stand. However, even if the English Judgment is considered a maritime claim, the facts of this matter present considerable equitable grounds to support the conclusion that Bhatia's attachment must be vacated. Accordingly, Alcobex respectfully submits that this Court should exercise its discretion in favor of vacatur.

First, *it was Alcobex and not Bhatia that sustained a loss* as a result of Bhatia's admitted negligence in connection with the misdelivery of Alcobex's shipment. To allow Bhatia's

7

attachment to stand would be a clear miscarriage of justice that this Admiralty Court cannot allow. Equity demands that Bhatia's attachment be vacated.

Second, the filing of the English proceeding by Bhatia was designed to be an "anticipatory suit" to circumvent the Indian Courts and demonstrates a lack of good faith and fair dealing on the part of Bhatia the face of an admittedly liability and repeated promises to pay. Despite the reassurances to Alcobex that its claim would be resolved, Bhatia surreptitiously raced to a courthouse over four thousand miles away from Alcobex's and Bhatia's places of business and filed an "anticipatory suit" to avoid the Indian Courts – a proper, convenient and logical forum to resolve a dispute between Indian companies, arising out of a shipment from India under a bill of lading issued by an Indian forwarder. Admittedly, Bhatia named the parties to the transportation chain in the English proceeding but, in essence, the other parties were window dressing to Bhatia's "anticipatory suit." Indeed, if Bhatia had pursued such litigation tactics in the United States, the anticipatory suit seeking a declaratory judgment would likely have been dismissed. *See, e.g., Factors Etc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) (upholding dismissal of declaratory judgment action filed in anticipation of lawsuit and noting that the "federal declaratory judgment is not a prize to the winner of a race to the courthouses.").

Third, Bhatia's selection of England courts rather than the Indian courts deprived Alcobex of any meaningful chance to defend itself. Alcobex was not insured for the legal costs and expenses associated with defending itself in the English proceeding. Retaining counsel and defending itself in a forum over four thousand miles away from its principal place of business posed a significant financial burden on Alcobex. Kanunga Aff. ¶14. If the £68,000

(USD$138,000) spent by Bhatia in obtaining a judgment in a proceeding in which only one party presented its case is any indication of the costs associated with English litigation, the significant financial burden Alcobex feared was, in fact, a real one.

Finally, an exercise of discretion in favor of vacating Bhatia's attachment is consistent with the discretionary grounds for vacating a maritime attachment set forth by the Second Circuit in *Aqua Stoli*. Clearly, if both Bhatia and Alcobex were present in the same U.S. judicial district or Alcobex was present in a convenient adjacent jurisdiction, the Court would have a substantial basis to vacate the attachment. In fact, both Alcobex and Bhatia are located in India and Bhatia could have obtained jurisdiction over Alcobex in India. In the circumstances of this case, vacating Bhatia's attachment on the basis that this is a dispute between Indian companies, with their principal place of business in India, for a shipment from an Indian port, for a claim that is pending before the Indian court would be a logical yet limited extension of *Aqua Stoli* and no doubt serve to curb the slew of Rule B attachments that have inundated this Court.

## CONCLUSION

For the reasons set forth herein, defendant Alcobex Metals Ltd. respectfully submits that Process of Maritime Attachment and Garnishment obtained by plaintiff should be vacated and the funds immediately released.

Dated:  New York, New York
        January 4, 2008

HILL RIVKINS & HAYDEN LLP
Attorneys for Defendant
Alcobex Metals Ltd.

By:_____

James A. Saville, Jr. (JS-4835)
Christopher M. Panagos (CP-2199)
45 Broadway – Suite 1500
New York, New York 10006
(212) 669-0600

TO:
Michael E. Unger, Esq.
Freehill Hogan & Mahar LLP
80 Pine Street
New York, New York 10005

Attorneys for Plaintiff
Bhatia Shipping and Agencies Pvt. Ltd.