513-07/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BHATIA SHIPPING AND AGENCIES PVT. LTD.,

                                              **07 CIV 9346 (BSJ)**

        Plaintiff,

  -against-

ALCOBEX METALS LTD.,

        Defendant.
----------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO VACATE ATTACHMENT**


                                       FREEHILL HOGAN & MAHAR, LLP
                                       Attorneys for Plaintiff
                                       Bhatia Shipping and Agencies Pvt. Ltd.
                                       80 Pine Street
                                       New York, NY  10005
                                       (212) 425-1900 / (212) 425-1901 fax

<u>Of Counsel</u>
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)


NYDOCS1/297480.1

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| RELEVANT BACKGROUND FACTS | 1 |
| ARGUMENT | |
| Point I | |
| The Instant Action Arises Within This Court's Admiralty and Maritime Jurisdiction | 4 |
| Point II | |
| There Are No Equitable Grounds For Vacating the Instant Attachment | 6 |
| That Bhatia Did Not Sustain a Loss With Respect to the Cargo Is Irrelevant | 6 |
| The Declaratory Judgment Action Was Not an Anticipatory Suit | 7 |
| Alcobex Was Not Deprived of an Opportunity to Defend Itself | 12 |
| Alcobex's "What If" Argument Is Frivolous | 13 |
| CONCLUSION | 14 |

## **TABLE OF AUTHORITIES**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006) .................... 4, 14

Capitol Records v. Optical Recording Corp., 810 F. Supp. 1350 (S.D.N.Y. 1992) .................... 9

Employers Ins. of Wausau v. The Prudential Ins. Co. of America, 763 F. Supp. 46 (S.D.N.Y. 1991) .................... 10

Factors Etc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978) .................... 7, 9, 10

Int'l Sea Food Ltd. v. Campeche, 566 F.2d 482 (5th Cir. 1978) .................... 5

La Fondiaria Assicurazione, S.p.A. v. Ocean World Lines, Inc., 2002 U.S. Dist. LEXIS 23913 (S.D.N.Y. Dec. 12, 2002) .................... 9

Murphy v. Corporate Express Office Products, Inc., 2006 U.S. Dist. LEXIS 62167 (D.CT. Aug. 31, 2006) .................... 8, 10

Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990) .................... 7

Scholastic, Inc. v. Stouffer, 2000 U.S. Dist. LEXIS 11516 (S.D.N.Y. Aug. 14, 2000) .................... 7, 8, 9, 10

Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709 (2d Cir. 1987) .................... 5

Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528 (1995) .................... 9

Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2000) .................... 14

## PRELIMINARY STATEMENT

Plaintiff BHATIA SHIPPING AND AGENCIES PVT. LTD. ("BHATIA"), through undersigned counsel, respectfully submits this Memorandum of Law and the Accompanying Hardingham Declaration in opposition to the motion by Defendant ALCOBEX METALS LTD. ("ALCOBEX") to vacate the maritime attachment obtained in this matter. For the reasons that follow, ALCOBEX's motion should be denied.

## RELEVANT BACKGROUND FACTS

ALCOBEX contracted to sell a quantity of metal tubes to Salem Tube International Ltd. (a non-party to this action) and to deliver those tubes to Salem in England. In order to meet its transportation obligations under the contract, ALCOBEX retained BHATIA, essentially in the capacity of a freight forwarder, to make the necessary transportation arrangements. BHATIA, in turn, hired an ocean carrier, Sai Shipping Co. Pvt. Ltd. (also a non-party to this action) to carry the metal tubes from India to England. Sai issued an ocean bill of lading for the carriage to BHATIA, and BHATIA in turn issued multimodal transport documents to ALCOBEX. Hardingham Declaration ¶3-6.

The original bill of lading together with the multimodal transport documents act as a receipt for the cargo and were subject to ALCOBEX's control. In the ordinary course, once ALCOBEX is paid for the cargo, ALCOBEX should release the documents to the buyer, who can then use the documents to obtain possession of the cargo. In the ordinary course, cargo is not released unless the party holding the cargo is presented with the original transport documents. Hardingham Declaration ¶7.

The cargo of metal tubes appears to have been delivered to Salem in February 2002. ALCOBEX now claims that it was never paid for the cargo and that the cargo was released without first collecting the original bill of lading and the multimodal transport documents. Since BHATIA neither had possession of the cargo nor was it involved in any release of the cargo without presentation of the original transport documents, even if *arguendo*, ALCOBEX's allegations are true, its loss is not in any way the fault of BHATIA, but rather that of Sai or the various port agents, terminal operators and/or stevedores which actually handled the cargo. Nonetheless, ALCOBEX presented a claim for the loss to BHATIA, presumably on the theory that BHATIA was ALCOBEX's contractual bailee of the cargo of metal tubes. Since the claim exceeded the amount of BHATIA's deductible, BHATIA turned the claim over to its underwriters, advising that ALCOBEX was threatening to cease doing business with it and recommending that the underwriters settle the claim. Hardingham Declaration ¶8-10.

A substantial amount of time passed without ALCOBEX taking any legal action to secure its position or to extend the nine month time limit[1] provided by law and under the BHATIA multimodal transport documents within which to bring suit. ALCOBEX corresponded with BHATIA on several occasions, but it was not until June 2003 that ALCOBEX, through counsel, issued what it termed a "final demand letter". By this time, ALCOBEX's claim was already time-barred and BHATIA had already filed an action to declare ALCOBEX's claim untimely. Hardingham Declaration ¶11-13.

---

[1] *See* English Court Judgment, Ex. 2 to the Hardingham Declaration. For what it may be worth, ALCOBEX did not seek any suit time extension at all. Its "final demand letter" was not issued until June 2003, some 16 months after the alleged loss (Hardingham Declaration ¶11) and ALCOBEX did not file suit until January 2004, 23 months after the alleged loss. By way of comparison, the U.S. Carriage of Goods by Sea Act bars claims that are more than 12 months old. *See also* Hardingham Declaration Ex. 2 ¶20-23 for the English Court's view of the time bar issue.

NYDOCS1/297480.1                                    2

The relevant transportation contract provides that suit may be brought in a number of different places, including the place of delivery of the cargo, which in this case was England. BHATIA brought suit in a forum that was appropriate under the contract (the English High Court of Justice, Queens Bench Division, Admiralty and Commercial Registry) on April 3, 2003 seeking declaratory judgment that ALCOBEX's claim was time-barred. The case arose under the English Court's admiralty jurisdiction. Hardingham Declaration ¶12-13.

Multiple notices, all as required under English legal principles of due process and fair notice, were served on ALCOBEX informing it of the proceedings against it in England. Confirmation of ALCOBEX's receipt of these notices was received, and ALCOBEX in fact responded to some of the notices. Hardingham Declaration ¶14.

One of the notices that ALCOBEX admits it received (*see* Defendant's Kanunga Declaration ¶13 and Ex. 8) was a letter from the Court which advised that ALCOBEX's acknowledgement of service (which contained ALCOBEX's *pro se* request to challenge the Court's jurisdiction based upon improper service) was defective and that ALCOBEX needed to provide the Court with the name and address of a solicitor within the Court's jurisdiction, else run the risk that the defective acknowledgment of service be struck out and judgment in default be entered against it. Under English law (as under U.S. law) a corporation cannot appear before the Court *pro se* and accordingly, ALCOBEX's acknowledgment and its request to challenge jurisdiction were both null. Similarly, ALCOBEX's employee, Mr. Gupta, who claims to have filed an application with the English Court seeking a stay, setting aside service, or granting additional time was also a nullity, and on June 25, 2004 the English Court scheduled the matter for trial on October

11, 2004. ALCOBEX was given notice of the trial date, but failed to make any appearance or submissions on its own behalf. ALCOBEX also made no effort to adjourn the trial date. The trial proceeded and on October 20, 2004, the English Court entered judgment in favor of BHATIA, finding it had jurisdiction over ALCOBEX and that ALCOBEX's claim was time-barred (see Ex. 2 to the Hardingham Declaration). The judgment included an award (as is typical under English law) of certain costs in favor of BHATIA and against ALCOBEX, in the amount of £68,000 (approximately $138,000). Hardingham Declaration ¶15, 16, 18.

ALCOBEX took no steps to appeal or otherwise set aside the English judgment against it, and refused or otherwise failed to pay BHATIA's demand for payment against the judgment. Accordingly, BHATIA began enforcement proceedings against ALCOBEX, including the instant action. Hardingham Declaration ¶19.

## ARGUMENT

### Point I

### THE INSTANT ACTION ARISES WITHIN THIS COURT'S ADMIRALTY AND MARITIME JURISDICTION

The Second Circuit's decision in <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434 (2d Cir. 2006) sets forth various legal grounds for vacating a maritime attachment: (1) there is no valid maritime claim; (2) the defendant can be found within the district; (3) the defendant's property cannot be found within the district; (4) there is a maritime or statutory bar to the attachment; (5) the defendant is present in a convenient adjacent district; (6) the defendant is present in the district where the plaintiff is located; and (7) the plaintiff has already obtained sufficient security for a judgment.

Of these seven grounds, Defendant ALCOBEX raises an argument only with respect to the first ground – that the instant action is not based on a valid maritime claim. ALCOBEX claims that the attachment in this action secures nothing more than a money judgment which "cannot be considered a maritime claim." ALCOBEX Brief at 7. ALCOBEX's argument on these grounds in its brief is entirely unsupported because it is untrue and frivolous. It is in fact well-settled that a request made of this Court to recognize and enforce a maritime judgment or award of another Court (or arbitral body) arises under this Court's admiralty and maritime jurisdiction. *See, e.g,* Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987) (admiralty jurisdiction exists over claim to enforce foreign judgment that is itself based on a maritime claim); Int'l Sea Food Ltd. v. Campeche, 566 F.2d 482, 485 (5th Cir. 1978) (U.S. admiralty jurisdiction exists over action to enforce an award of a foreign forum that is maritime in nature). The underlying action in England was maritime in nature and arose under that Court's admiralty jurisdiction (*see* Hardingham Declaration ¶13). Accordingly, the instant application before this Court to recognize and enforce the English maritime judgment arises under this Court's admiralty and maritime jurisdiction.

Defendant ALCOBEX raises no other legal argument in support of vacature of the attachment and it is respectfully submitted that there is none that would support vacature of the attachment in this action. Instead, ALCOBEX focuses the majority of its application on a request that this Court exercise its discretion to vacate the attachment on principles of equity. It is to that argument that we now turn.

**Point II**

**THERE ARE NO EQUITABLE GROUNDS
FOR VACATING THE INSTANT ATTACHMENT**

ALCOBEX's principal argument in favor of vacature is that the Court has the inherent power to set aside an attachment that is unfair or otherwise inequitable. While the Court may indeed have such authority in general terms, the grounds for exercising such authority plainly do not exist in this case.

That Bhatia Did Not Sustain a Loss with Respect to the Cargo is Irrelevant

ALCOBEX's first equitable argument is that with respect to the alleged misdelivery of the metal tubes, it was ALCOBEX, not BHATIA, that sustained a loss. ALCOBEX Brief at 7-8. While it is true enough that BHATIA did not suffer a loss resulting from the misdelivery of the cargo, it did become a target of ALCOBEX's claim despite the fact that BHATIA was not responsible for ALCOBEX's loss (if any). Rather, the loss (if any) was due to the actions of one or more of the other defendants in the English Court action – the ocean carrier, the port agents, terminal operators, or stevedores which physically handled the cargo and (allegedly) released it without presentation of the proper shipping documents. Hardingham Declaration ¶23.

ALCOBEX's continued claim threats against BHATIA well past the nine months within which it should have brought suit (or requested additional time within which to bring suit)[2] created an unacceptable exposure to BHATIA and its underwriters. BHATIA properly addressed ALCOBEX's untimely claim by (a) bringing suit in a jurisdiction – England – that was acceptable under the contract (because it was the place where the cargo was delivered) against not only ALCOBEX, but also against those who were

---

[2] Or, indeed, within twelve months as may have been applicable – *see* Hardingham Declaration Ex. 2 ¶20-23.

actually responsible for ALCOBEX's loss (if any), and (b) obtaining a declaratory judgment that ALCOBEX's claim was untimely. ALCOBEX voluntarily chose not to appear in the action nor did it contest the judgment that was issued. A balancing of the equities of this argument simply does not tilt in favor of ALCOBEX.

The Declaratory Judgment Action Was Not an Anticipatory Suit

BHATIA's action in England was not an "anticipatory suit" as alleged by ALCOBEX, nor was there any lack of good faith or fair dealing on the part of BHATIA in bringing its suit in England. *See* ALCOBEX Brief at 8. ALCOBEX's argument in this regard is frivolous to the point of absurdity.

An anticipatory suit is one in which a party that has received a notice letter that threatens a lawsuit races to a courthouse in order to be the first to file and thereby gain priority on its choice of forum. Under such circumstances where a Court finds that a suit was anticipatory, the first to file priority is not always respected (though it may be). In such cases, where suits are filed close in time to one another, a court may look to such other circumstances as convenience of the parties and witnesses, whether other law suits are implicated, etc. Factors Etc. v. Pro Arts, Inc., 579 F.2d 215, 218-219 (2d Cir. 1978);[3] *see also* Scholastic, Inc. v. Stouffer, 2000 U.S. Dist. LEXIS 11516 (S.D.N.Y. Aug. 14, 2000) (holding that a Court may consider the following factors in assessing the balance of convenience: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel

---

[3] The Second Circuit later reconsidered the result of Factors on an issue of New York civil law not relevant here (whether the right of celebrity is descendible) and concluded that its decision in this regard was incorrect based on a later-decided New York Court of Appeals case. *See* Pirone v. MacMillan, Inc., 894 F.2d 579, 585 (2d Cir. 1990).

attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances).[4] Indeed, a United States District Court even has the authority, when a declaratory judgment suit is challenged as anticipatory, to consider whether the declaratory judgment action was brought for purposes of improper forum shopping. Murphy v. Corporate Express Office Products, Inc., 2006 U.S. Dist. LEXIS 62167, *2-4 (D.CT. Aug. 31, 2006).

This Court, however, is not the proper forum for determining whether the English action was brought for purposes of improper forum shopping. Such a challenge should have been brought (if at all) before the English Court or in an appropriate court in India. Through the instant action, this Court is merely being asked to recognize and enforce a judgment of the English High Court. Despite the procedural infirmity of ALCOBEX's challenge to the English Court's ability to exercise personal jurisdiction, the reasoned Judgment issued by the English Court makes clear the Judge there gave due consideration to ALCOBEX's contention and rejected same. Hardingham Declaration Ex. 2. This venue is simply not the place to challenge the jurisdiction of the English High Court. Respectfully, it is simply not this Court's place to consider whether there was an improper race to the Courthouse. Challenging the English Court's jurisdiction here for the first time – solely for purpose of attempting to vacate an attachment – is so far afield

---

[4] It is clear that on balance these factors cited in Scholastic favor the proceedings in England. The English Court action was not brought against ALCOBEX alone (as ALCOBEX intimates), but was also brought against five other defendants – the parties who actually handled ALCOBEX's cargo and who were truly responsible for ALCOBEX's loss (if any) – for indemnity in the event that BHATIA was found liable to ALCOBEX. Hardingham Declaration Ex. 2 ¶13. England was the only place where all parties could be joined in the same proceeding. Thus, it was entirely appropriate for BHATIA to have commenced the English Court action, and there was no design or intent to trick or cause inconvenience to ALCOBEX in doing so.

NYDOCS1/297480.1                                8

from the proper bases upon which to challenge an attachment[5] as to border on the frivolous.

Even if this Court were to consider whether there had been an improper race to the Courthouse in England, this Court should find that there was no impropriety. The parties' contractual agreement contained a forum selection clause which provided that among the places where a dispute could be resolved was the place where the cargo was delivered. Here, there is no question that the cargo was delivered in England, rendering the English High Court an appropriate venue for the resolution of the dispute. It is the well settled law of this country that parties' contractual choice of forum should be respected. "Forum selection clauses are favored for the certainty they bring to overseas shipping transactions." La Fondiaria Assicurazione, S.p.A. v. Ocean World Lines, Inc., 2002 U.S. Dist. LEXIS 23913, *5 (S.D.N.Y. Dec. 12, 2002), *citing* Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528, 538 (1995). That ALCOBEX now regrets having made such an agreement does not render the forum selection clause unenforceable.

Moreover, "races to the Courthouse" which imply that a declaratory judgment action was anticipatory are generally judged on the basis of the closeness in time in which the suits were brought: "courts often ignore differences in the dates of filing when competing suits are filed within a short period of each other, *see* Factors, 579 F.2d at 218 (five days); Capitol Records v. Optical Recording Corp, 810 F.Supp. 1350, 1355 (S.D.N.Y. 1992) (twenty days)." Scholastic, 2000 U.S. Dist. LEXIS 11516 at *28. Where, however, there is no second suit filed, or where the second suit is filed

---

[5] "Rule E(4)(f) is designed to…[guarantee] a prompt post-seizure hearing at which [the defendant] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings". *Advisory Committee Notes to Rule E* (1985 Amendment).

substantially later than the first, courts deem that there was no race to the courthouse for purposes of bringing an improper anticipatory suit. *See* Employers Ins. of Wausau v. The Prudential Ins. Co. of America, 763 F. Supp. 46, 49 (S.D.N.Y. 1991), (citing cases); *see also* Scholastic, 2000 U.S. Dist. LEXIS 11516 at *28; Murphy, 2006 U.S. Dist. LEXIS 62167 at *6-7. Here, BHATIA's suit in England, filed on April 3, 2003 (when ALCOBEX's claim was already two months past the time bar) substantially predated ALCOBEX's suit in India, which was not brought until January 30, 2004. *See* ALCOBEX Brief at 6. ALCOBEX gives no explanation for its delay in bringing proceedings beyond the time bar, gives no explanation (other than cost, but see below) why it did not seek to dismiss or transfer the English action to India, or why it waited so long to bring its own proceedings in India, let alone why it failed to move the Indian Court to challenge the English action. Under such circumstances, ALCOBEX completely fails to carry its burden[6] of showing why the English action should be disregarded as anticipatory.

ALCOBEX's further argument that BHATIA "surreptitiously" filed suit by running four thousand miles away to a courthouse in England is entirely disingenuous. There is nothing surreptitious about the English lawsuit – prompt notice of the suit was properly served on ALCOBEX, and ALCOBEX was regularly apprised of the proceedings against it in England. If ALCOBEX did not want to litigate in a forum 4,000 miles from its home (as it now says), it either (a) should not have agreed to the jurisdiction clause in the contract or (b) should have timely commenced proceedings in India, or (c) should have moved the English Court to dismiss on *forum non conveniens*

---

[6] It is the well settled law of this Circuit that a defendant seeking to change forum or venue bears the burden of showing why the first-filed action should not be given primacy. *See* Factors, 579 F.2d at 218.

grounds. ALCOBEX took none of these actions, however, and has never taken any steps in any proceeding to challenge the English judgment. Indeed, the English Court specifically found that (with relation to the criminal proceedings initiated by ALCOBEX against BHATIA in India): "[i]t would appear that this warrant [for the arrest of Mr. Bhatia, a principal of BHATIA] (and in all probability the criminal proceedings themselves) were designed to put improper pressure on [BHATIA] in relation to the present proceedings. At all events, from the materials before the Court, the criminal proceedings seem to be wholly without merit." Hardingham Declaration Ex. 2 ¶11.

Although ALCOBEX did not raise the issue there, the English Court nonetheless considered whether it was the proper forum for the dispute, given that ALCOBEX and BHATIA were both Indian companies. The English Court concluded that it was. In that regard, it is important to note that the suit in England brought by BHATIA was not only against ALCOBEX (for a declaratory judgment of non-liability) but was also against all five of the other parties who actually handled the cargo, seeking indemnity against them to the extent that BHATIA might be found liable to ALCOBEX. Those entities were all in England or otherwise subject to the English Court's jurisdiction. The English Court held:

> Furthermore, I am satisfied that England, not India is the proper and appropriate forum for these proceedings. Although it is true that both [BHATIA] and ALCOBEX are Indian companies, the alleged misdelivery occurred in England. If [BHATIA]'s claim against the other Defendants had to proceed, the bulk of any evidence would come from England. Since the object of [BHATIA]'s claim against ALCOBEX is to obviate the need for any such trial because the Court is invited to declare that [BHATIA] is not liable to ALCOBEX, I have no doubt that England is the appropriate forum for the determination of he issue between [BHATIA] and ALCOBEX.

> Furthermore, since the contract(s) of carriage are governed by English law so far as the present dispute is concerned, that is a further reason why the English court is the appropriate forum. However, even if I had concluded that the contract(s) were governed by Indian law, it would not alter my view that England is the appropriate forum, particularly since, as emerges from Mr. Pratap's Affidavit, in all material respects for present purposes, Indian law is the same as English law.

Hardingham Declaration Ex. 2 ¶18.

<u>Alcobex Was Not Deprived of an Opportunity to Defend Itself</u>

ALCOBEX next asserts that BHATIA's choice to litigate in England deprived ALCOBEX of a meaningful chance to defend itself because of the cost of such proceedings. Such argument is utterly disingenuous and should be rejected out of hand. First, ALCOBEX plainly has the wherewithal to employ attorneys both in India and in America (both of which would have been unnecessary if ALCOBEX had appeared in the English proceedings and had been successful). Also, if ALCOBEX had been successful in England, it would have recovered its costs (including but not limited to reasonable attorneys fees) in defending against BHATIA's declaratory judgment action there. By contrast, ALCOBEX's counsel fees in the United States are not recoverable.[7]

ALCOBEX also intimates now, for the first time, that it was somehow lulled into not taking any action on its own behalf. Of course, this proceeding is not the proper forum for raising such an argument, particularly when the English Court judgment found the opposite. The English Court judgment recounts that ALCOBEX sent numerous letters threatening suit (Hardingham Declaration Ex. 2 at ¶6, and also notes specifically that in considering the improper (and incorrect) challenge to the English Court's jurisdiction made by ALCOBEX, "[i]t is particularly striking that in its application

---

[7] Undersigned counsel understands that ALCOBEX's counsel fees in India are similarly not recoverable.

ALCOBEX does not address the time-bar issue which is the basis of the Claimant's claim for a declaration or suggest that it has any defence to it." Hardingham Declaration Ex. 2 at ¶10.

Alcobex's "What If" Argument Is Frivolous

ALCOBEX's final argument is that *if* ALCOBEX and BHATIA had both been located in the same U.S. District (or in adjoining districts), then an attachment could not stand. Such argument is pointless: ALCOBEX and BHATIA are not both located in the same U.S. District, nor are they located in adjoining U.S. districts. Indeed, neither entity is located in the United States at all. ALCOBEX's intimation that because both entities are in India, they should be treated as though they are in the same "District" ignores the fact that these two entities are located in different cities, Jodhpur and Mumbai, which are some 500 miles apart from one another and in different Indian states, Rajasthan and Maharashtra, which are not adjoining.[8] ALCOBEX's argument in this regard is misleading and meaningless at best and not worthy of serious further response.

ALCOBEX's concluding suggestion that this Court should exercise its discretion and enter a ruling that would vacate an attachment that BHATIA is entitled to have for a policy reason of attempting to curb the number of Rule B attachment actions brought in this District is shocking. It appears to be a blatant and open invitation to Your Honor to engage in unethical behavior and enter an improper and legally unjustifiable ruling just so as to undermine the Federal Rules of Civil Procedure and what these Rules – on their face

---

[8] By way of comparison, the undersigned is not aware of any U.S. District courts that encompass two cities the size of Mumbai and Jodhpur that are such a distance apart, and no two U.S. states are (any longer) contained within a single District.

and as has been consistently approved by the Second Circuit[9] – plainly allow. If so, it is self-evident that the Court should (at a minimum) decline such an outrageous invitation.

## CONCLUSION

For all the foregoing reasons, Defendant's motion should be denied.

Dated: New York, New York
January 18, 2008

Respectfully submitted,

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
Bhatia Shipping and Agencies Pvt. Ltd.

By: _____
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

To:   Hill Rivkins & Hayden LLP
*Attorneys for Defendant*
45 Broadway, Suite 1500
New York, NY 10006
   Attn:   James A. Saville, Jr., Esq.
       Kipp C. Leland, Esq.
       Christopher M. Panagos, Esq.

---

[9] *See generally, e.g.,* Aqua Stoli, *supra,* and Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2000).

NYDOCS1/297480.1                         14