513-07/MEU/LJK
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
Bhatia Shipping and Agencies Pvt. Ltd.
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BHATIA SHIPPING AND AGENCIES PVT. LTD.,

                    Plaintiff,

-against-

ALCOBEX METALS LTD.,

                    Defendant.
-----------------------------------------------------------------x

07 CIV 9346 (BSJ)

**DECLARATION OF ADRIAN CHARLES HARDINGHAM**

ADRIAN HARDINGHAM, pursuant to 28 U.S.C. §1746 hereby declares and says the following under penalty of perjury:

1. I have since 1978 been a solicitor of the Supreme Court of England and Wales and have been a partner with the law firm of Holmes Hardingham, 22-23 Great Tower Street, London EC3R 5HE, England, since 1989. I make this declaration on behalf of Plaintiff BHATIA SHIPPING AND AGENCIES PVT. LTD. ("BHATIA") in opposition to the motion by ALCOBEX METALS LTD. ("ALCOBEX") to vacate the maritime attachment in this action.

2. Holmes Hardingham was retained to act as legal counsel for BHATIA in connection with a dispute with ALCOBEX and I am the partner responsible for the handling of this matter. I make this declaration based upon my own personal knowledge.

NYDOCS1/297286.1               1

3. ALCOBEX contracted to sell a quantity of metal tubes to Salem Tube International Ltd. (a non-party to this action) and to deliver those tubes to Salem in England.

4. In order to meet its transportation obligations under the contract, ALCOBEX retained BHATIA to make the necessary transportation arrangements. In this regard, BHATIA acted, essentially, in the capacity of a freight forwarder.

5. BHATIA, in turn, hired an ocean carrier, Sai Shipping Co. Pvt. Ltd. (also a non-party to this action) to carry the metal tubes from India to England. Sai issued an ocean bill of lading for the carriage to BHATIA.

6. BHATIA, in turn, issued multimodal transport documents to ALCOBEX.

7. The original bill of lading together with the multimodal transport documents act as a receipt for the cargo and are subject to the control of ALCOBEX until ALCOBEX is paid for the cargo. Once ALCOBEX is paid, it is required to turn control over the original bill of lading and multimodal transport documents to Salem. Under regular shipping practice, Sai should not have released the cargo of metal tubes to Salem until it received both the original bill of lading and the multimodal transport documents from Salem. Salem, of course, should not have been in possession of the original bill of lading or the multimodal transport documents unless it paid for the cargo.

8. The cargo of metal tubes appears to have been delivered to Salem in February 2002. ALCOBEX claims it had not been paid, and it appears that the cargo may have been released without first collecting the original bill of lading and the multimodal transport documents. If so, it is not the fault of BHATIA and is instead the

fault of one or more of the following – the ocean carrier, the port agents, the terminal operators and/or the stevedores who actually handled the cargo.

9. Nonetheless, ALCOBEX made claim against BHATIA, presumably on the theory that BHATIA was ALCOBEX's contractual bailee of the cargo of metal tubes.

10. Because the claim exceeded the amount of BHATIA's deductible, BHATIA turned ALCOBEX's claim over to its underwriters. BHATIA advised its underwriters that ALCOBEX was threatening to cease doing business with it and BHATIA recommended to its underwriters that the claim be settled.

11. It appears that a substantial amount of time passed without ALCOBEX taking any legal action to secure its position or to extend the time within which to bring suit. ALCOBEX corresponded with BHATIA on several occasions, but it was not until June 2003 that ALCOBEX, through counsel, issued what it termed a "final demand letter". By this time, ALCOBEX's claim was already time-barred.

12. The relevant transportation contract provides that suit may be brought in a number of different places, including the place of delivery of the cargo, which in this case was England.

13. Accordingly, and on instructions from BHATIA's underwriters we commenced a declaratory judgment proceeding in the English High Court of Justice, Queens Bench Division, Admiralty and Commercial Registry on 3 April 2003 to declare that ALCOBEX's claim against BHATIA for misdelivery of cargo transported by sea was untimely, and, in the alternative for an indemnity against those parties which were responsible for the release of the goods without production of the original bill of lading and multimodal transport documents, which were all in England or subject to suit there.

This suit involved a maritime claim and therefore arose under the Court's admiralty jurisdiction under English law.

14. Consistent with principles of notice and due process under English law, ALCOBEX was given multiple notices of each stage of the proceedings against them in England and was given numerous opportunities to appear and make its case before the English High Court. True and accurate copies of such notices are attached hereto as Exhibit 1. There is also evidence within the Exhibit of their receipt by ALCOBEX. Thus there are fax transmission reports. There are also letters addressed to ALCOBEX by O.P. Gaggar which have been signed for by ALCOBEX and there are Affidavits of Service by Mr. Gaggar. Mr. Gaggar was retained on behalf of BHATIA to effect service of certain documents on ALCOBEX.

15. One of the notices that ALCOBEX admits receiving (*see* Kanunga Declaration ¶13 and Ex. 8) was a letter from the Court which advises that ALCOBEX's acknowledgement of service (which contained ALCOBEX's request to challenge the Court's jurisdiction based upon improper service) was defective and that ALCOBEX needed to provide the Court with the name and address of a solicitor within the Court's jurisdiction, else run the risk that the defective acknowledgment of service be struck out and judgment in default be entered against it.

16. It is important to point out that a corporation cannot, under English law, appear before the Court *pro se*, and accordingly, ALCOBEX's acknowledgement (which did not reference a solicitor to represent it) and its request to challenge jurisdiction were both null. Similarly, ALCOBEX's employee, Mr. Gupta, who claims to have filed an application with the High Court seeking to stay the case, setting aside service, or

alternatively, granting additional time to serve further evidence in support of the application on 7 October 2003 was also not well received, since Mr. Gupta is not a solicitor. Accordingly, this application was also a nullity for want of an acknowledgment of service having been filed giving the address of a solicitor within the jurisdiction who would represent ALCOBEX.

17.     I am informed that ALCOBEX brought proceedings against BHATIA in India, in January 2004 on the cargo claim. I am informed that the Indian court would view this application as untimely, as it arose nearly two years after delivery of the cargo. BHATIA timely filed its answer to ALCOBEX's Indian action in October 2004, denying liability, asserting a defense of time-bar, and requesting a stay in favor of the first-filed action in England.

18.     On 25 June 2004, the High Court scheduled the matter for trial on 11 October 2004. ALCOBEX was provided notice of the trial date by the undersigned. ALCOBEX failed to make any appearance or make any submissions on its own behalf, nor did ALCOBEX make any effort to adjourn the trial date. The trial proceeded and on 20 October 2004, the English High Court entered judgment in favor of BHATIA, finding it had jurisdiction over ALCOBEX and that ALCOBEX's claim was time-barred. A true and accurate copy of the Judgment is attached hereto as Exhibit 2. The judgment included an award of certain costs in favor of BHATIA and against ALCOBEX, in the amount of £68,000 (equivalent to approximately $138,000).

19.     Despite that the Approved Judgment and Costs Award was duly served up and demand was made of ALCOBEX to pay the costs award, ALCOBEX refused or

otherwise failed to pay. Accordingly, BHATIA brought this action for enforcement purposes.

20. Now that the English proceeding has been reduced to a judgment, I am informed that the Indian Court would be in a position to dismiss ALCOBEX's action there under principles of *res judicata*, estoppel, and comity.

21. ALCOBEX now complains, for the first time, that the reason it made no effort to appear and defend its position in the English action was because it was unable to afford the cost of legal representation. ALCOBEX's argument in this regard is not credible for two reasons – (a) ALCOBEX has the financial wherewithal to employ attorneys in India and America (both of which would have been unnecessary if ALCOBEX had appeared in the London proceedings), and (b) if ALCOBEX had been successful in England, it would have recovered its costs (including but not limited to its attorneys fees) in defending against BHATIA's declaratory judgment action.

22. As to the "unfairness" argument raised by ALCOBEX, this too holds no water. If ALCOBEX did not want to litigate in a forum 4,000 miles from its home (as it now says), it either (a) should not have agreed to the jurisdiction clause in the contract or (b) it should have timely commenced proceedings in India or (c) it should have moved the English Court to dismiss the case on *forum non conveniens* grounds. ALCOBEX took none of these actions, however.

23. In terms of balancing equities, ALCOBEX's claim that it is the truly injured party and not BHATIA is counter-balanced by the fact that ALCOBEX's loss (if any) is not due to any fault of BHATIA. It is clear from the documents appended to the Kanunga Declaration that ALCOBEX principally (and probably rightly) blames the

ocean carriers, port agents and stevedores – which were actually in physical possession of the cargo – for the loss. BHATIA's theoretical liability for ALCOBEX's loss, at least in principle, is based only on a legal relationship that did not involve BHATIA's actual physical possession of the cargo at any time and did not involve any improper release of the cargo to anyone by BHATIA.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated:    London, England

17th January 2008

By: _____

Adrian Charles Hardingham