```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/3/08
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------x
BHATIA SHIPPING AND AGENCIES PVT. LTD.,  :
                                          :   07-cv-9346 (BSJ)
                    Plaintiff,            :
                                          :
            v.                            :   **Order**
                                          :
ALCOBEX METALS LTD.,                      :
                                          :
                    Defendant.            :
------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Bhatia Shipping and Agencies Pvt. Ltd ("Bhatia"). filed this suit on October 18, 2007, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), seeking security in the amount of $138,244.79 to satisfy a foreign judgment obtained against Defendant Alcobex Metals Ltd ("Alcobex"). The summons was issued on the same day and an <u>ex parte</u> application for a Rule B attachment was granted by this Court on October 24, 2007. Alcobex now moves to vacate the maritime attachment. For the reasons that follow, Alcobex's motion is DENIED.

### I. Facts and Procedural Background

Alcobex is an Indian company in the business of manufacturing and exporting non-ferrous metals, rods, pipes, tubing, etc. (<u>See</u> Affirmation of G.C. Kanunga dated January 4,

1

2008, at ¶ 2)(hereinafter "Kanunga Aff."). In April 2001, Alcobex contracted to sell a quantity of metal tubes to Salem Tube International Ltd. ("Salem") (a non-party to this action) and to deliver those tubes to Salem in England. The terms of payment were 100% cash against documents ("CAD") and the terms of delivery were "CIF UK Port." (Kanunga Aff. ¶ 3, Ex. 1). In order to meet its transportation obligations under the contract, Alcobex retained defendant Bhatia Shipping & Agencies Pvt. Ltd. ("Bhatia"), a freight forwarder/carrier based in Mumbai, India. Bhatia, in turn, hired an ocean carrier, Sai Shipping Co. Pvt. Ltd. (also a non-party to this action) to carry the metal tubes from India to England. (See Declaration of Adrian Charles Hardingham dated January 22, 2008, ¶ 5)(hereinafter "Hardingham Decl.").

The cargo of metal tubes appears to have been delivered to Salem in February 2002. (See Kanunga Aff. ¶ 7). However, Alcobex claims that it never received payment for the cargo and that Bhatia and/or its agents improperly released the cargo without obtaining the original bills of lading. (Kanunga Aff. ¶ 7). In or about May, 2002, Alcobex presented a claim for the loss to Bhatia and Bhatia turned the claim over to its underwriters, recommending that the underwriters settle the claim. (Kanunga Aff. ¶ 9; Hardingham Decl. ¶¶ 8-10).

However, the claim was not settled and on June 20, 2003, Alcobex, through counsel, sent a final demand letter to Bhatia. At this point, Bhatia had commenced an action in England seeking a declaration that Alcobex's claims against Bhatia were time barred. (Kanunga Aff. ¶ 11, Ex. 6; Hardingham Decl. ¶¶ 11-13). In August 2003, Alcobex was served with a claim form and Mr. Kanunga, the Managing Director of Alcobex, returned the Acknowledgement of Service to the English Court, noting that Acobex intended to challenge the jurisdiction of the Court. (Kanunga Aff. ¶, Ex. 7). On September 17, 2003, the Clerk of the Admiralty and Commercial Registry advised Alcobex that Alcobex's acknowledgement of service (which contained Alcobex's pro se request to challenge the Court's jurisdiction) was defective and that Alcobex needed to provide the Court with the name and address of a solicitor.[1]

However, Alcobex claims that the costs of retaining English solicitors and defending the action in England would have posed a significant financial burden. On October 7, 2003, Mr. Gupta of Alcobex filed an application with the High Court of Justice seeking a stay, setting aside service, or granting additional time.(See Kanunga Aff., Ex. 9). This pro se application was also a nullity and on June 25, 2004, the English Court scheduled

---

[1] Under English law a corporation cannot appear before the Court pro se.

the matter for trial on October 11, 2004. (Kanunga Aff. ¶ 17; Hardingham Decl. ¶ 18).

On January 30, 2004, Alcobex commenced a recovery proceeding against Bhatia in Salem before the Bombay High Court. On or about October 1, 2004, Bhatia filed an answer to Alcobex's complaint in the Bombay High Court, denying liability and asserting that the action should be stayed pending the outcome of the October 11, 2004 hearing on the basis that the English proceeding was filed prior to the action in the Bombay High Court. The Indian Action is still pending.

The trial commenced in England on October 11, 2004. Alcobex did not make any appearance or any submissions on its own behalf. On October 20, 2004, the English High Court issued a Judgment and Order (the "English Judgment") finding that it had personal jurisdiction over Alcobex, finding that Alcobex's claim was time-barred and awarding £ 68,000 in costs to Bhatia. (Hardingham Decl., Ex. 2).

Alcobex did not appeal or otherwise move to set aside the English Judgment and has failed to pay Bhatia's demand for payment against the judgment. Accordingly, on October 18, 2007, Bhatia filed the instant enforcement action in this Court and obtained an Order of Maritime Attachment against Alcobex in the amount of $138,244.79.

Alcobex now moves to vacate the maritime attachment obtained by Bhatia in this matter. In support of its motion for vacatur, Alcobex contends that the English Judgment on which Bhatia bases its attachment is simply a common law money judgment and cannot be considered a maritime claim. Therefore, Alcobex asserts that in the absence of a maritime claim, Bhatia's maritime attachment cannot stand. Alcobex alternatively argues that even if the English Judgment is considered a maritime claim, this Court should exercise its discretion to vacate the attachment on principles of equity.

## II. Discussion

### A. The Instant Action Arises Under This Court's Admiralty and Maritime Jurisdiction

In the present case, Defendant argues that the attachment should be vacated because the instant action is not based on a valid maritime claim.[2] The parties do not dispute that admiralty jurisdiction exists over a claim to enforce a foreign judgment that is itself a maritime claim. See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709 (2d Cir. 1978). Alcobex, however, argues that an English judgment for costs is not a

---

[2] The Second Circuit's decision in Aqua Stoli Shipping Ltd. V. Gardner Smith Pty Ltd., sets forth various legal grounds for vacating a maritime attachment: (1) there is no valid maritime claim; (2) the defendant can be found in the district; (3) the defendant's property cannot be found within the district; (4) there is a maritime or statutory bar to the attachment; (5) the defendant is present in a convenient adjacent district; (6) the defendant is present in the district where the plaintiff is located; and (7) the plaintiff has already obtained sufficient security for a judgment. 460 F.3d 434 (2d Cir. 2006).

5

maritime claim under either U.S. or English law. In support of this contention, Alcobex refers the court to Judge Leisure's recent decision in Naias Marine S.A. v. Trans Pacific Carriers, Co. Ltd., No. 07 Civ. 10640, 2008 WL 111003 (S.D.N.Y. Jan. 10, 2008). However, Alcobex's reliance on Naias Marine is misplaced.

The dispute in Naias Marine action arose out of a maritime contract charter party agreement between Naias Marine and Trans Pacific. Naias Marine, 2008 WL 111003 at *1. Trans Pacific had an affirmative claim and sought arbitration of that claim in London, pursuant to an arbitration agreement in the charter. Id. Trans Pacific sought security for the claim that was to be arbitrated in London and for costs associated with that arbitration by way of a Rule B attachment in this Court. Id. The Rule B application was granted and Trans Pacific successfully restrained funds belonging to Naias Marine. Naias did not seek countersecurity in this action. Trans Pacific voluntarily dismissed the action after Naias Marine provided alternative security for the principal claim and for the estimated costs of the London arbitration.

Shortly after Trans Pacific's New York action was terminated, Naias Marine commenced its own Rule B application before this Court, seeking security for estimated costs of defending against Trans Pacific's claims which it hoped to

6

recover in the London arbitration. Trans Pacific moved to vacate Naias Marine's Rule B attachment asserting, inter alia, that Naias Marine's claim for costs and fees was not a maritime claim under either English or U.S. law. The Court agreed.

There is a substantial difference between the situations in Naias Marine and in the instant case, and that difference is based on the status of the case. In Naias Marine, the question before the Court was whether a particular *claim* gave rise to maritime jurisdiction and, as the opinion makes clear, the decision in that case was based on the fact that an action making a *claim* for fees and costs without more does not give rise to this Court's independent maritime jurisdiction:

> Naias, however, has asserted only a claim for legal costs without more. While Rules E(2)(b) and E(7) may be indicative of the Court's ability to grant security for costs under other circumstances, here, where Naias has failed to set forth a maritime claim, those rules do not apply. Naias has failed to meet its burden of showing that maritime jurisdiction exists.

Naias Marine, at *17-18. However, in the instant matter, Bhatia seeks recognition and enforcement of a *judgment* which undisputedly was issued in a suit which involved a maritime claim and arose under that Court's admiralty jurisdiction.[3] It

---

[3] As already noted, the English Judgment was issued in a declaratory judgment proceeding commenced by Bhatia in the English High Court of Justice, Queens Bench Division, Admiralty and Commercial Registry, to declare that Alcobex's claim against Bhatia for misdelivery of cargo transported by sea was untimely, and, in the alternative, for an indemnity against those parties which were responsible for the release of goods without production of the

7

is well settled that a request made of this Court to recognize and enforce as maritime judgment or award of another Court (or arbitral body) arises under this Court's admiralty and maritime jurisdiction. See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987)(holding that a "claim for enforcement of [a] British judgment asserted a maritime claim since an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim"); see also Int'l Sea Food Ltd. V. Campeche, 566 F.2d 482, 485 (5th Cir. 1978)(U.S. admiralty jurisdiction exists over action to enforce an award of a foreign forum that is maritime in nature). Accordingly, the instant application before this Court to recognize and enforce the English maritime judgment arises under this Court's admiralty and maritime jurisdiction.

Alcobex raises no other legal arguments in support of vacating the attachment. Accordingly, the Court finds that the technical requirements for effective attachment have been met in this case. See Aqua Stoli Shipping Ltd., 460 F.3d at 445.

### B. There Are No Equitable Grounds For Vacating the Attachment

Alcobex alternatively argues that principles of equity demand that Bhatia's attachment be vacated. Courts have an "inherent authority to vacate an attachment upon a showing of

---

original bill of lading and multimodal transport documents. See Hardingham Decl. ¶ 13.

any improper practice or a manifest want of equity on the part of plaintiff." See Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519, 528 (S.D.N.Y. 2006). However, the grounds for exercising such authority are not present here.

Alcobex's first equitable argument is that with respect to the alleged misdelivery of the metal tubes it was Alcobex, not Bhatia, that sustained a loss. (Alcobex Br. at 7-8). Nevertheless, Bhatia did become a target of Alcobex's claim for that loss. In order to defend against that potential liability, Bhatia brought suit in England, a jurisdiction which was acceptable under the contract (because it was the place where the cargo was delivered), against not only Alcobex but also against parties which Bhatia alleged were responsible for the misdelivery and obtained a declaratory judgment that Alcobex's claim was untimely. Thus, the fact that Bhatia did not suffer a direct loss resulting from the misdelivery of the cargo is irrelevant and a balancing of the equities of this argument does not weigh in favor of vacatur.

Alcobex next argues that the filing of the English proceeding by Bhatia was an anticipatory suit designed to circumvent the Indian Courts and demonstrates a lack of good faith and fair dealing on the part of Bhatia. An improper anticipatory filing is "one made under the apparent threat of a presumed adversary filing the mirror image of that suit" in

9

another court. Ontel Products, Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1150 (S.D.N.Y.1995). Under such circumstances, a court may exercise discretion in favor of a second-filed action. Id.

As an initial matter, this Court is not the proper forum for determining whether the English action was brought for the purposes of improper forum shopping; such a challenge should have been brought before the English Court or in an appropriate court in India. *See Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 556 (S.D.N.Y. 2000)(holding that the court in which the first-filed case was brought should determine whether there are circumstances warranting a departure from the first-filed rule). And although Alcobex did not raise the issue there, the English Court nonetheless considered whether it was the proper forum for the dispute, given that Alcobex and Bhatia were both Indian companies. The English Court concluded that it was:

> Furthermore, I am satisfied that England, not Inida is the proper and appropriate forum for these proceedings. Although it is true that both [Bhatia] and [Alcobex] are Indian companies, the alleged misdelivery occurred in England. If [Bhatia's] claim against the other Defendants had to proceed, the bulk of any evidence would come from England. Since the object of [Bhatia's] claim against Alcobex is to obviate the need for any such trial because the Court is invited to declare that [Bhatia] is not liable to Alcobx, I have no doubt that England is the appropriate forum for the determination of the issue between Bhatia and Alcobex. Furthermore, since the

10

>contract(s) of carriage are governed by English law so far as the present dispute is concerned, that is a further reason why the English court is the appropriate forum.

(Hardingham Decl., Ex. 2).

Even were this Court to consider whether there had been an improper "race to the Courthouse," the evidence in the record before the Court does not establish such impropriety. First, "races to the Courthouse" are generally judged on the basis of the closeness in time in which the suits were brought. See Factors Etc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978)(five days); Capitol Records v. Optical Recording Corp., 810 F.Supp. 1350, 1355 (S.D.N.Y. 1992)(twenty days). Where, however, a second filed action is brought substantially later than the first, courts deem that there was no race to the courthouse for the purpose of bringing an improper anticipatory suit. See Employers Ins. Of Wasau v. The Prudential Ins. Co. of America, 763 F.Supp. 46, 49 (S.D.N.Y. 1991). Here, Bhatia's suit in England filed on April 3, 2003 substantially predated Alcobex's suit in India, which was not brought until January 30, 2004. Alcobex gives no explanation for its delay in bringing the proceedings,[4] or for why it did not seek to dismiss or transfer

---

[4] Alcobex intimates that it was lulled into not taking any action on its own behalf due to assurances from Bhatia that it would assume the liability. However, Alcobex does not explain why it did not take timely legal action to secure its position or to extend the time within which to bring suit when its numerous letters to Bhatia did not result in payment. Indeed, Alcobex does

11

the English Action to India, or for why it did not move the Indian Court to challenge the English Action.

Second, "a litigant is 'open to a charge of forum shopping [only when] he chooses a forum with slight connection to the factual circumstances surrounding the suit.'" Columbia Pictures Indus., Inc. v. Schneider, 435 F.Supp. 742, 746 (S.D.N.Y. 1977)(quoting Rayco Mfg. Co. v. Chicopee Mfg.Co., 148 F.Supp. 588, 593 (S.D.N.Y. 1957). Here, the parties' contractual agreement contained a forum selection clause which provided that one of the places in which a dispute could be resolved was the place where the cargo was delivered. It is undisputed that the cargo was delivered in England, rendering the English High Court an appropriate venue.

Lastly, Alcobex contends that due to costs, litigation in England deprived Alcobex of any meaningful chance to defend itself. However, the Court finds that this is not a sufficient grounds for vacating Bhatia's attachment. Moreover, the Court notes that Alcobex does not address the time bar issue which was the basis of Bhatia's claim in the English action nor does Alcobex suggest that it had any defense to it.

Accordingly, the Court finds that no equitable grounds exist which favor vacating Bhatia's attachment.

---

not dispute that it did not even issue "a final demand letter" until June 2003, at which point its claim was already time-barred.

### III. Conclusion

Therefore, for the reasons set forth in this opinion, the Alcobex's motion to vacate Bhatia's maritime attachment is DENIED.

**SO ORDERED:**

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         July 3, 2008